IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARIE CARTER, individually, and
as guardian ad litem for Tavaris Phillips,

        Plaintiff,

    v.

WINCO FOODS, LLC and
WINCO HOLDINGS, INC.,

        Defendants.

Case No. 3:24-cv-01830-AB

OPINION & ORDER

Carl Lee Post
John D. Burgess
Snyder, Post and Burgess
1000 SW Broadway Suite 2400
Portland, OR 97205

     Attorneys for Plaintiff

Thomas C. Sand
Matthew A. Tripp
Naomi Levelle Haslitt
Miller Nash LLP

1 – OPINION & ORDER

1140 SW Washington St Suite 700
Portland, OR 97205

       Attorneys for Defendants

**BAGGIO, District Judge:**

Plaintiff Marie Carter, individually and as guardian ad litem for Tavaris Phillips, brings this case against Defendants WinCo Foods, LLC and WinCo Holdings, Inc. Plaintiff alleges race discrimination under 42 U.S.C. § 1981 for herself and on behalf of Phillips, and race discrimination under Oregon Revised Statute § ("ORS") 659A.403 on behalf of Phillips.[1] Defs.' Notice of Removal Ex. 1, at 19–22, ECF No. 1 (First Amended Complaint). Defendants move for summary judgment on all claims. Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 22. For the following reasons, the Court grants Defendants' Motion for Summary Judgment.

## BACKGROUND

On May 14, 2023, Plaintiff Marie Carter and her fifteen-year-old son, Tavaris Phillips ("Plaintiffs"),[2] went to the WinCo store located at 7979 SE Powell Boulevard in Portland, Oregon. Tripp Decl. Ex. 2 ("Phillips Dep.") 8:19–22, ECF No. 23-2. Plaintiffs approached the self-checkout area with twenty-seven items. Abbott Decl. ¶¶ 8, 14, ECF No. 24; Abbott Decl. Ex. 1, ECF No. 24-1 (transaction data from Plaintiffs' final grocery purchase); Pl.'s Resp. 1 (agreeing Plaintiffs had twenty-seven grocery items). The self-checkout area, however, was limited to customers with no more than "ABOUT 15 ITEMS." Tripp Decl. Ex. 7, ECF No. 23-7

---

[1] Plaintiff Marie Carter and Tavaris Phillips are African American. Pl.'s Resp. Defs.' Mot. Summ. J. ("Pl.'s Resp.") 6 n.5, ECF No. 29.

[2] Plaintiffs assert throughout their responsive brief that Plaintiff Phillips was fourteen years old on the date in question, *see, e.g.*, Pl.'s Resp. 1, 12; however, as Defendants correctly identify, Plaintiff Phillips was fifteen years old, Defs.' Reply ISO Defs.' Mot. ("Defs.' Reply") 4, ECF No. 34 (citing Second Tripp Decl. Ex. 1, ECF No. 36 (Plaintiff Phillips's birth certificate filed under seal)).

2 – OPINION & ORDER

(a picture of the posted policy); Tripp Decl. Ex. 1 ("Carter Dep.") 63:22–64:14, ECF No. 23-1; Phillips Dep. 41:15–42:2. In practice, this meant customers were generally allowed to purchase up to seventeen items at the self-checkout area, Tripp Decl. Ex. 3 ("Abbott Dep.") 16:22–17:8, ECF No. 23-3, and at most, customers would purchase up to twenty items, Tripp Decl. Ex. 4 ("Coffee-Johnson Dep.") 18:25–19:22, ECF No. 23-4. Ultimately, the purpose of the item-limit policy was to facilitate quicker transactions, customer flow, and reduce theft. Abbott Decl. ¶ 9; Coffee-Johnson Decl. ¶ 7, ECF No. 25. Store personnel were expected to consistently enforce the item-limit policy. Abbott Decl. ¶ 6.

Plaintiffs, although they approached the self-checkout area with twenty-seven items, intended to make two separate transactions. Carter Dep. 8:14–9:1; Phillips Dep. 17:1–4.[3] Noticing that Plaintiffs had "significantly more than 15 items in their shopping cart[,]" store clerk Linda Coffee-Johnson told Plaintiffs they could not purchase that number of items in the self-checkout area and directed Plaintiffs to a regular checkout lane. Coffee-Johnson Decl. ¶ 6; Coffee-Johnson Dep. 7:3–12. Plaintiffs insisted they could use the self-checkout area because they intended to perform two transactions. Coffee-Johnson Dep. 7:13–22; Carter Dep. 8:3–9:1. Coffee-Johnson then shut off the self-checkout register that Plaintiffs were using. Coffee-Johnson Dep. 7:18–24; Carter Dep. 9:15–22. Plaintiffs attempted to use a different self-checkout register, but Coffee-Johnson shut that one off too. Coffee-Johnson Dep. 7:25–8:6; Carter Dep. 9:22–24. Eventually, Coffee-Johnson shut off all the self-checkout registers. Carter Dep. 9:24–10:2; Phillips Dep. 13:10–16.

---

[3] The videos recorded by Plaintiffs paint a different picture of their purchase intent. Rather than make two separate purchases, the videos indicate that Plaintiffs intended to scan fifteen items before returning any extra items. *See* Tripp Decl. Ex. 5, ECF No. 23-5; Tripp Decl. Ex. 6, ECF No. 23-6. The Court finds this factual dispute ultimately irrelevant to the Court's analysis.

3 – OPINION & ORDER

Plaintiffs then asked Coffee-Johnson for the store manager. Carter Dep. 9:2–4; Phillips Dep. 17:5–24. The store manager on May 14, 2023, was Jayson Abbott. Abbott Decl. ¶ 2. Coffee-Johnson paged Abbott, and he came over. Coffee-Johnson Dep. 8:7–12; Abbott Dep. 10:12–11:22. When Abbott arrived, he told Plaintiffs they had too many items for the self-checkout area and that they needed to use a regular checkout lane. Carter Dep. 12:24–13:3; Abbott Dep. 11:24–12:2. Plaintiffs again explained they intended to perform two transactions and that they had less than thirty items total. Carter Dep. 13:4–16. Plaintiffs began pulling items out of their cart and counting them out. *Id.* at 13:17–14:6. As Plaintiffs were counting their items, Abbott put the items back into Plaintiffs' cart and asked Plaintiffs to leave the store. *Id.* at 14:2–6. Plaintiffs responded: "Well, why do I [need to leave] the store? I have done nothing wrong. I'm just here to shop for—grab a few items for Mother's Day. . . . We're doing two different transactions. It says 15 items or less. Like, I don't understand why you're treating me like this." *Id.* at 14:7–14. Abbott again asked Plaintiffs to leave the store, to which Plaintiffs refused. *Id.* at 14:20–25.

Eventually, both Abbott and Plaintiff Carter called the police. *Id.* at 16:9–18; Abbott Dep. 18:4–6. The police told Plaintiffs to wait until they arrived, Carter Dep. 17:6–10, but during this waiting period, a different WinCo worker opened a regular checkout lane for Plaintiffs to purchase their groceries, *id.* at 18:4–8. Plaintiffs used that checkout lane to purchase their groceries and left the store before police arrived. *Id.* at 70:21–71:4. After Plaintiffs left, a police officer called Plaintiffs to take a statement. *Id.* at 71:5–8.

At some point during the interaction between Plaintiffs and Abbott, Abbott grabbed Plaintiffs' shopping cart. *Id.* at 14:25–15:2; Abbott Dep. 24:18–23. Plaintiffs responded by pulling back. Carter Dep. 15:3–15:4; Abbott Dep. 24:18–23. Plaintiff Phillips then said to

4 – OPINION & ORDER

Abbott, "[h]ey, man, why are you trying to strongarm the cart?" Post Decl. at 131, ECF No. 30.[4] Abbott subsequently flinched at Plaintiff Phillips as if Abbott was going to hit him. *Id.* at 132–33; Carter Dep. 38:4–21. Abbott, alternatively, claims Plaintiff Phillips stepped up to him and that he was afraid Plaintiff Phillips was going to hit him. Abbott Decl. ¶ 12.

Also at some point during the interaction between Plaintiffs and Abbott, Plaintiff Carter asked Abbott whether he was treating Plaintiffs poorly because of their race or gender—to which Abbott responded no. Carter Dep. 22:12–24. Neither Abbott nor Coffee-Johnson commented on Plaintiffs' race throughout the entire interaction. *Id.* at 22:25–23:1, 25:9–11. Plaintiff Carter further pointed out a nearby white customer with seventeen items waiting to use the self-checkout area. *Id.* at 33:19–35:24; Phillips Dep. 24:21–25:23; Abbott Dep. 12:16–21. All of the white customer's items were vegetables wrapped in individual bags. Carter Dep. 35:25–36:21. Plaintiff Carter did not see whether the white customer scanned all seventeen items. *Id.* at 40:17–41:15.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

---

[4] All pincites of the Declaration of Carl Post, ECF No. 30, are based on the ECF-generated page numbers.

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *F.T.C. v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Defendants move for summary judgment on Plaintiffs' claims under 42 U.S.C. § 1981 and Plaintiff Phillips's claim under ORS 659A.403. Defs.' Mot. Defendants argue they are entitled to summary judgment on Plaintiffs' § 1981 claims because, among other things, Plaintiffs cannot establish a prima facie case of discrimination. *Id.* at 10. Defendants argue they are entitled to summary judgment on Plaintiff Phillips's state law claim because it is time-barred. *Id.* at 17. The Court agrees with Defendants on both issues. Accordingly, the Court grants Defendants' Motion for Summary Judgment.

///

///

6 – OPINION & ORDER

I.      **Section 1981**

Under 42 U.S.C. § 1981:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). To "make and enforce contracts" means the right to make, perform, modify, and terminate contracts, and to enjoy the "benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). The rights set out in § 1981 "are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c).

Section 1981 claims require evidence of "intentional discrimination on account of race." *Evans v. McKay*, 869 F.2d 1341, 1344 (9th Cir. 1989). Where intent "is generally impossible to prove," courts apply the *McDonnell Douglas* burden-shifting framework. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973)).[5] Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination. *Id.*[6] At the summary judgment stage, the proof needed to establish a prima facie case "is 'minimal and does not even need to rise to the

---

[5] For claims of racial discrimination arising under state law, including ORS 659A.403, federal courts also apply the *McDonnell Douglas* framework. *Clark v. Safeway, Inc.*, 478 F. Supp. 3d 1080, 1093 (D. Or. 2020).

[6] Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to demonstrate a "legitimate non-discriminatory reason for the adverse action." *Id.* If the defendant meets their burden, the plaintiff must then demonstrate that the defendant's reason is pretext for intentional discrimination. *Id.*

level of a preponderance of the evidence.'" *Id.* at 1144–45 (quoting *Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1124 (9th Cir. 2000)).

To establish a prima facie case of discrimination under § 1981, the plaintiff must establish that (1) they are a "member of a protected class," (2) they "attempted to contract for certain services," (3) they were "denied the right to contract for those services[,]" and (4) "such services remained available to similarly-situated individuals who were not members of the plaintiff's protected class." *Id.* at 1145. In *Lindsey*, the Ninth Circuit considered modifying the fourth element of the prima facie case in the "commercial, non-employment context." *Id.* Specifically, the court considered whether a plaintiff could alternatively establish the fourth element of their prima facie case with evidence that the "plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." *Id.* (quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001)). Although the court found this alternative approach "compelling," it did not adopt it. *Id.* ("[W]e need not decide today whether [the Sixth Circuit's] modification of the fourth element of a *prima facie* case under section 1981 is required in many or all cases arising in a commercial, non-employment context.").

Here, Defendants argue that Plaintiffs cannot establish the fourth element of their prima facie case under either approach because "WinCo did not treat Plaintiffs differently than similarly situated individuals of a different race" and "Plaintiffs did not receive services in a markedly hostile manner that a reasonable person would find objectively discriminatory." Defs.' Mot. 11–12. Plaintiffs respond that they present sufficient evidence. Pl.'s Resp. 8–9. The Court agrees with Defendants.

///

8 – OPINION & ORDER

A.    Similarly Situated

Defendants argue that Plaintiffs cannot establish they were treated differently than similarly situated individuals of a different race because Plaintiffs' purported comparator—the white customer at the self-checkout area with seventeen items—is inapplicable. Defs.' Mot. 11–12. Specifically, Defendants argue that Plaintiffs did not observe whether the white customer had "multiple pieces of the same produce, which would count as a single item for purposes of the self-checkout lane item limit[;]" Plaintiffs never actually saw the white customer scan all seventeen items; and seventeen items is within the permissible range of items allowed at the self-checkout area. *Id.*

"[I]ndividuals are similarly situated when they . . . display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004). Here, the Court finds that the white customer did not display similar conduct to Plaintiffs because he only brought seventeen items to the self-checkout area—in contrast to the twenty-seven items brought by Plaintiffs. Carter Dep. 33:19–35:24; Pl.'s Resp. 1. As stated, the self-checkout area was limited to customers with "ABOUT 15 ITEMS." Tripp Decl. Ex. 7. In practice, this meant customers were generally allowed to purchase up to seventeen items at the self-checkout area, Abbott Dep. 16:22–17:8, and at most, customers would purchase up to twenty items, Coffee-Johnson Dep. 18:25–19:22. Therefore, although the white customer had more than fifteen items, he was still within the range of items generally permitted at the self-checkout area. In contrast, Plaintiffs brought twenty-seven items, an amount far greater than the white customer and the upper limit of Defendants' item policy. Abbott Decl. ¶¶ 8, 14. To say that Plaintiffs and the white customer were similarly situated because they displayed similar conduct, therefore, is misplaced.

9 – OPINION & ORDER

Plaintiffs far exceeded the item-limit policy while the white customer was within the permissible range of items.[7]

In attempt to enhance their similarly-situated argument, Plaintiffs submit self-checkout transaction data, including transactions from around the time Plaintiffs attempted to use the self-checkout area and all self-checkout transactions from May 14, 2023. Pl.'s Resp. 9 (citing Second Post Decl. Exs. A–B, ECF No. 31). Plaintiffs argue that because this data shows many self-checkout transactions of more than fifteen items, this is sufficient to conclude that similarly situated individuals were treated differently. *Id.* However, Plaintiffs' transaction data lacks a key component; it does not provide any data on the customers themselves. Thus, even though many customers purchased more than fifteen items using the self-checkout area—including 174 transactions of at least eighteen items—the Court cannot determine whether these customers were or were not members of Plaintiffs' protected class.

For these reasons, the Court finds that Plaintiffs cannot establish they were treated differently than similarly situated individuals of different race. Accordingly, Plaintiffs cannot establish the fourth element of their prima facie case of intentional discrimination.

///

///

///

---

[7] To the extent Plaintiffs intended to make two separate transactions, each under fifteen items, Carter Dep. 8:14–9:1, the Court finds that such intent does not detract from Defendants' enforcement of its self-checkout item-limit policy. As Defendants identify, allowing customers to split large purchases into multiple transactions on a single register is inconsistent with the purpose of the item-limit policy, which is designed to facilitate quicker transactions and prevent theft. Abbott Decl. ¶ 9; Coffee-Johnson Decl. ¶ 7. Moreover, Plaintiffs have not put forth any evidence demonstrating that other customers engaged in this multiple-transaction behavior—let alone were permitted to do so.

10 – OPINION & ORDER

B.       Objectively Discriminatory

Defendants next argue that Plaintiffs cannot establish they received services in a markedly hostile manner that a reasonable person would find objectively discriminatory. Defs.' Mot. 12–14.

Courts that apply the modified test for the fourth element of a prima facie case in the commercial establishment context "consider whether the conduct is: '(1) so profoundly contrary to the manifest financial interests of the merchant and/or her employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination.'" *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 641 (6th Cir. 2009) (quoting *Christian*, 252 F.3d at 871).

For example, in *Pack v. Walmart, Inc.*, No. 3:20-CV-01604-YY, 2023 WL 2876918, at *2 (D. Or. Mar. 23, 2023), *report and recommendation adopted*, No. 3:20-CV-1604-YY, 2023 WL 2869627 (D. Or. Apr. 10, 2023), the plaintiff—a black woman—entered the self-checkout area of a Walmart with a shopping cart containing an electronic game, large pillows, dishes, a beverage, and some candy. The plaintiff had previously purchased the electronic game and large pillows in the electronics section of the store but had not yet purchased the other items. *Id.* After purchasing the remaining items, the store clerk who was monitoring the self-checkout area asked the plaintiff for a receipt for the pillows. *Id.* Based on this evidence alone, the plaintiff argued that the store clerk singled the plaintiff out because of her race. *Id.* The court, however, found this "self-serving testimony" insufficient to sustain the plaintiff's discrimination claim at summary judgment: "Plaintiff offers no other evidence of discrimination, such as (1) race-based statements, . . . (2) racial slurs, . . . or (3) proof that she was treated differently . . . ." *Id.* (collecting cases).

11 – OPINION & ORDER

By contrast, in *Strickland v. Residence Inn By Marriott, LLC*, No. 3:21-CV-00270-HZ, 2021 WL 2920608, at *3 (D. Or. July 12, 2021), while checking into his hotel, the plaintiff—a black man—and his sister were accused of committing a crime (forgery), and the plaintiff was characterized as uneducated and illiterate. The court found this evidence sufficient "from which a factfinder could reasonably infer a discriminatory motive based in invidious racial stereotypes about African Americans." *Id.*

Here, unlike the plaintiff in *Strickland* and more like the plaintiff in *Pack*, Plaintiffs do not present any evidence—other than their own declarations—that Defendants enforced the self-checkout item-limit policy against Plaintiffs in such a manner that would support a rational inference of discrimination. Plaintiff Carter states that she "believe[s she] was treated differently because of [her] race and gender, as a Black woman." Carter Decl. ¶ 14, ECF No. 32. Yet when Plaintiffs asked Abbott whether he was treating Plaintiffs poorly based on their race or gender, Abbott responded negatively. *See* Carter Dep. 22:12–24. Moreover, neither Abbott nor Coffee-Johnson commented on Plaintiffs' race during the interaction. *Id.* at 22:25–23:1, 25:9–11. Such a conclusory statement then, that Plaintiffs were treated differently because of their race, without "detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997); *see also Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988) ("[C]onclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment.").

Plaintiffs otherwise argue that Abbott and Coffee-Johnson's generally hostile treatment towards Plaintiffs—including shutting off the self-checkout registers, flinching at Plaintiff Phillips, and telling Plaintiffs to leave the store—permits a rational inference of discrimination,

12 – OPINION & ORDER

i.e., a jury could find that Plaintiffs were "treated in a markedly hostile manner that a reasonable person would find objectively discriminatory." Pl.'s Resp. 8–9. The Court, however, drawing inferences from these facts in the light most favorable to Plaintiffs, disagrees. Without any circumstantial evidence that Defendants' treatment of Plaintiffs was motivated by Plaintiffs' race, Plaintiffs cannot establish a prima facie case of discrimination under this alternative method. *See, e.g.*, *Pack*, 2023 WL 2876918, at *3 (holding that without evidence the plaintiff's race motivated the store clerk's conduct, the plaintiff cannot establish a prima facie case—even assuming the store clerk deviated from store policy); *Clark*, 478 F. Supp. 3d at 1091 (holding evidence that a Safeway employee did not want to make a report about an assault was insufficient for a reasonable person to find objectively discriminatory); *Ofuasia v. Spirit Halloween Superstores, LLC*, No. 3:20-CV-00076-YY, 2021 WL 3783069, at *4–5 (D. Or. July 21, 2021) (holding evidence that Spirit Halloween employees asked the plaintiff to leave the store based on a false report of shoplifting was insufficient to be reasonably construed as objectively discriminatory), *report and recommendation adopted*, No. 1:20-CV-00076-YY, 2021 WL 3779834 (D. Or. Aug. 24, 2021), *aff'd*, No. 21-35783, 2022 WL 15523098 (9th Cir. Oct. 27, 2022).

## II.    ORS 659A.403

Defendants move for summary judgment on Plaintiff Phillips's state law claim under ORS 659A.403 because it is time-barred. Defs.' Mot. 17; Defs.' Reply 15–17. Plaintiffs respond that Plaintiff Phillips's claim is tolled. Pl.'s Resp. 12–13. The Court agrees with Defendants and grants Defendants' Motion for Summary Judgment on Plaintiff Phillips's claim.[8]

---

[8] Because the Court finds that Plaintiff Phillips's claim under ORS 659A.403 is time-barred, the Court need not address Defendants' alternative argument that Plaintiff Phillips fails to present evidence of discriminatory animus. *See* Defs.' Mot. 17–18; Defs.' Reply 17.

Under ORS 659A.403, it is unlawful "for any person to deny full and equal accommodations, advantages, facilities and privileges of any place of public accommodation" "on account of race, color, religion, sex, sexual orientation, gender identity, national origin, marital status or age if the individual is of age . . . or older." ORS 659A.403. Civil actions brought pursuant to this statute "must be commenced within one year of the occurrence of the unlawful practice." ORS 659A.875(4).

Here, Defendants argue that Plaintiff Phillips's claim under ORS 659A.403 is time-barred because this action was commenced on June 24, 2024—more than a year after the incident from May 14, 2023. Defs.' Mot. 17. Plaintiffs respond that ORS 12.160(1) tolls Plaintiff Phillip's claim because he is a minor. Pl.'s Resp. 12.

Under ORS 12.160(1):

[I]f a person is entitled to bring an action mentioned in ORS 12.010 to 12.050, 12.070 to 12.250 or 12.276, and at the time the cause of action accrues the person is a child who is younger than 18 years of age, the statute of limitation for commencing the action is tolled for so long as the person is younger than 18 years of age.

ORS 12.160(1). "The text of ORS 12.160 limits its application to claims brought by any person entitled to bring an action mentioned in the enumerated statutes." *Stupek v. Wyle Lab'ys Corp.*, 327 Or. 433, 446, 963 P.2d 678 (1998) (internal quotations marks omitted). Thus, claims not "included in the list of statutes enumerated in ORS 12.160" or cross-referencing ORS 12.160 are not subject tolling under that statute. *Id.*

Here, neither ORS 659A.403 nor ORS 659A.875(4) is mentioned in the list of statutes enumerated in ORS 12.160(1). Moreover, neither ORS 659A.403 nor ORS 659A.875(4) cross references ORS 12.160(1). Accordingly, the Court finds that Plaintiff Phillips's claim under ORS

14 – OPINION & ORDER

659A.403 is not subject to tolling under ORS 12.160(1); it is time-barred. The Court therefore grants summary judgment for Defendants on this claim.

## CONCLUSION

The Court GRANTS Defendants' Motion for Summary Judgment [22].

IT IS SO ORDERED.

DATED this __20th__ day of March, 2026.

_____
AMY M. BAGGIO
United States District Judge

15 – OPINION & ORDER